In the Matter of the Application of the ATLANTIC AVENUE ELEVATED RAILROAD COMPANY.

The provisions of the Rapid Transit Act (Chap. 606, Laws of 1875), are not violated or rendered ineffectual by the grant of a conditional instead of an absolute franchise to an elevated railroad company, or by the impositions of conditions subsequent.

The proposed route of an elevated railroad in the city of Brooklyn ran through a street upon which was a steam surface railroad; the plans and specifications adopted by the commissioners appointed by the mayor contained a condition that the road should not be authorized or permitted to be constructed until the company had entered into an agreement with the surface companies, to the effect that the latter after the completion of the elevated road would cease to run cars by steam on their roads, and that in case the agreement should be terminated by either of the parties thereto the right to maintain the elevated road

should be terminated. In proceedings for the appointment of commissioners to determine whether the road should be constructed, *held*, that the presence of this condition did not prevent the elevated company from acquiring a franchise or corporate capacity; that it was a condition subsequent, not one precedent to the acquisition of corporate life; that when this was acquired the corporation became endowed with an absolute, but a conditional franchise.

Also *held*, that the condition left the company within the reasonable scope and contemplation of the act, as it simply required that which was necessary, and which without it the law would have written into the charter.

Also *held*, that the clause in the proposed agreement forbidding the maintenance of the road in case of its termination, was not unreasonable and did not affect the validity of the charter.

(Argued December 12, 1892; decided December 20, 1892.)

APPEAL from orders of the General Term of the Supreme Court in the second judicial department, one of which was made May 12, 1890, and appointed commissioners to determine whether the petitioner's road should be constructed and operated, and the other made December 10, 1890, which confirmed the report of such commissioners.

The petitioner was organized April 17, 1890, under the Rapid Transit Act by commissioners appointed by the mayor of the city of Brooklyn, December 13, 1889.

It was authorized to construct an elevated railroad through Atlantic avenue in Brooklyn from the East river to the city line.

Atlantic avenue east of Flatbush was occupied by the Long Island railroad, a double-track steam surface railroad. As the lessee of the Atlantic avenue railroad, provision was made for the construction of the new road without interfering with the surface railroad.

The plan or scheme as presented by the commissioners provided that no construction should be permitted until the two companies now operating the steam surface railroads on Atlantic avenue shall have first executed an agreement with the new company directly and as trustee for the abutting owners, that when the elevated railroad is built the present

steam traffic is to be removed from the surface of the street to the elevated railroad, the fences and gates inclosing the present surface railroad removed, the rails changed to those used by horse cars and the grade restored, and that in case steam travel by the Long Island shall be restored to the surface of Atlantic avenue the right to maintain the elevated shall cease.

The company having failed to secure the consent of property holders as required applied for and obtained the appointment of commissioners to determine whether its road should be constructed as provided by the Rapid Transit Act. (Chap. 606, Laws of 1875.)

*George F. Danforth* for appellant. The orders are reviewable in this court. (Code Civ. Pro. §§ 1301, 1316.) The petitioner never possessed or became entitled to possess any power or privilege, right or franchise to construct or operate a railway over either of the routes in question. (Laws of 1875, chap. 606 ; *S. R. T. Co.* v. *Mayor, etc.*, 128 N. Y. 510.) The substantial question is from whom does the petitioner derive its supposed power. (66 N. Y. 389.) The plan or charter devised for the corporation is void as presenting a scheme not within the authority of the act and with methods repugnant to its provisions. (*P. R. T. Co.* v. *Dash*, 125 N.Y. 93 ; *S. R. T. Co.* v. *Mayor, etc.*, 128 id. 510, 518 ; 110 id. 128.) The clause above referred to cannot be stricken out and the rest of the scheme saved. (*In re N. Y. E. R. R. Co.*, 70 N. Y. 327 ; *In re K. C. E. R. Co.*, 82 id. 95 ; *In re N. Y. C. Co.*, 109 id. 32 ; *In re N. Y. C. & H. R. R. R. Co.*, 70 id. 191.)

*T. Ellett Hodgskin* for respondent. The confirmation by the General Term of the report of the commissioners to determine whether a railroad should be constructed, in lieu of the consent of the property holders, is an act of judicial discretion not appealable to this court. (*In re K. C. E. R. Co.*, 82 N. Y. 95 ; *Fredenburg* v. *Biddle*, 85 id. 200.) When the order appealed from is silent as to the grounds upon which it was made,

the Court of Appeals is bound to suppose that the determination of the General Term proceeded both upon the law and the facts. (*In re K. C. R. R. Co.*, 2 N. Y. 98; *In re H. R. R. Co.*, 98 id. 12, 18.) This proceeding is covered by the Rapid Transit Act (Chap. 606, Laws of 1875), and is not affected by the passage of the codification law of 1890. (Laws of 1892, chap. 676, § 123.) The proposition that the road was not legally organized because the rapid transit commissioners required that the company should, before it built, provide for the removal of the surface travel is without foundation. (*In re K. C. R. R. Co.*, 105 N. Y. 98.)

FINCH, J. Some of the property owners along the line of Atlantic avenue, in the city of Brooklyn, have refused their consent to the construction of an elevated railway passing in front of their premises, and have appealed from the order appointing commissioners to determine whether the proposed railway ought to be constructed, and also from the order confirming their favorable report. The company applying was formed under the Rapid Transit Act of 1875 (Chap. 606), the requirements of which have been formally observed, but the plan dictated and to accomplish which the company was organized contains a condition which it is now argued is fatal to the enterprise, and renders the organization so illegal and defective as to destroy the powers sought to be conferred.

That condition grew out of the prior occupation and rights of a steam surface railroad operating upon the same avenue, and with whose consent alone the proposed elevated road was possible. That fact appears to be conceded on all sides, and it is quite apparent that such express consent was essential to the scheme formulated. In recognition of that necessity and to meet the consequent emergency, the plan prepared contained the condition upon the asserted effect of which the objectors rely. That was in substance that the elevated road should not be authorized or permitted to be constructed and should have no power to do the work until it should first enter into an agreement with the surface companies transforming

their road into a mere street railway and transferring its operation by steam to the elevated tracks. What is now explicitly claimed is that the presence of this condition in the formulated plan or scheme prevented the elevated company from acquiring any franchise or capacity as a corporation. If that be true there is no foundation for the orders in question, but the objection must go to that full extent or fail in the result at which it aims.

I think the contention is unsound and not warranted by a consideration of the terms and purpose of the statute. Obviously, the condition is a condition subsequent and not one precedent to the acquisition of the corporate life and vitality. The agreement directed is to precede construction and not corporate existence. The company is to make the agreement and it must exist first in order to agree at all. When it has acquired corporate life and so is capable of acting it is endowed, not with an absolute but a conditional franchise, to become absolute upon the performance of one or more imposed conditions. Nothing, therefore, in the form of its creation makes its corporate life depend for its origin upon the execution of the prescribed contract.

Necessarily the objection takes another form and becomes a contention that the enabling statute does not contemplate or permit the formation of a company whose franchise is conditional upon its own voluntary act. But that phase of the objection is equally unsound. Always and in every such case the franchise granted is more or less qualified by conditions subsequent, the very office and purpose of which is the thorough protection of the public interest, and a failure to perform which will either prevent the absolute acquisition of the particular franchise granted or forfeit it for non-compliance. Every requirement for construction within a specified period is of that nature. It is a condition subsequent which qualifies the franchise bestowed, and practically ordains that the company shall begin as well as end its work within the specified period or have no power to do it at all. Sometimes for the safety of property owners the company has been

required to deposit a guarantee fund before beginning its actual work of construction. It is quite certain, therefore, that neither the act of 1875 nor those like it are violated or rendered ineffective by the grant of a conditional instead of a complete and absolute franchise, or by the imposition of conditions subsequent upon the constructing corporation.

The objection, therefore, must be further narrowed, and end in an allegation that this particular condition carries the company formed outside of the purpose and scope of the act and beyond its intended permission. But the condition here was necessary and inevitable. Without it, no elevated road could exist on Atlantic avenue, and the danger and inconvenience of a steam surface road, with its perilous and obstructed crossings, would always be remediless, unless through the agreement required. Nothing on the face of the Rapid Transit Act purports to except from its operation Atlantic avenue, or a street already occupied by a steam surface road. It makes no such discrimination, but applies to all. Its palpable purpose was to give rapid transit and yet secure the safety of the people and the normal use of the street by putting the steam trains above grade, and in no case could that purpose be more necessary and wise than where through its operation a steam road on the surface could be dislodged and lifted into the air. Shall we say that such purpose must fail because difficulties are encountered which make some unusual conditions necessary? The act itself answers us. It authorizes the commissioners in terms to impose such conditions as to them shall seem expedient, and to embody those conditions in the articles of association tendered for acceptance. Doubtless those conditions should be such as leave the company within the reasonable scope and contemplation of the act, and those before us are such because necessary and inevitable as applied to the construction and operation of an elevated road upon a street like Atlantic avenue. Nobody has ever supposed that the requirement of the law which makes the right to construct conditional upon the consent of the abutters or the equivalent approval of commis-

sioners and the court renders the franchise inoperative or the corporate life impossible, and I can see no reason why consent of the abutters may be required, but that of rightful occupants of the roadway may not be. It should be remembered also that if the condition had been omitted, the law would have written it into the elevated charter and the company have been compelled to negotiate as they are now compelled for the consent of the surface roads. Plainly, therefore, we must say that the Rapid Transit Act, in spite of its broad terms and purpose, cannot apply to streets already traversed by steam on the surface, and the mischief must remain, or that so applying, the necessary and inevitable conditions may be imposed.

What remains is the further criticism founded upon that clause in the proposed agreement which forbids the maintenance of its road by the Elevated Company, if the contract of the parties should be terminated. We are bound to assume that the stipulation was inserted by the commissioners from a conviction of both its necessity and wisdom. The surface roads would hesitate to part with their vested rights in exchange for trackage on the elevated road, unless, in case of the failure from any cause of the substituted right, they should be at liberty to resume their original position, and some stipulation covering that contingency was evidently necessary to induce them to contract at all : and on the other hand, in the same emergency, the interest of the people required that there should not be two steam roads, one elevated and one on the surface, operating on the avenue at the same time, and so the only one which could be stopped was to be discontinued. When it is considered that under the agreement the elevated road is to be constructed at very great expense, that the abutters will receive full compensation, not only for injury resulting from the structure, but for most of the inconveniences flowing from its operation ; that they will not be harmed by its discontinuance ; that the worst possible result will be a return to the old state of things, and that such result, after the surface rails have been removed and the grooved rail substituted, after the fences have been taken down and the gates

carried away, and the steam traffic lifted to the tracks above, is little likely to occur, we ought not to denounce the condition as unreasonable and fatal to the scheme.

That scheme as a whole gives to Atlantic avenue the exact elevated railway which the Rapid Transit Act authorized and contemplated, so far as the inevitable necessities of the situation permit, and whatever there is about it that is unusual and peculiar springs from those necessities and is needed to surmount them.

The orders should be affirmed, with costs.

All concur.

Orders affirmed.